11 COOKS, J.
Dissenting.
It is undisputed Mrs. Payne purchased the van to transport her handicapped grandson. The trial court’s reason for ruling against Mrs. Payne was that it did not find she met her burden of proving she clearly disclosed this intent to the defendant. The trial court acknowledge, as the record proves, Mrs. Payne would not have purchased the van were she aware it could not accommodate a wheelchair lift. The sole question turns.on whether representatives of the defendant dealership knew or should have known Mrs. Payne would not have purchased the van had she known it could not be fitted to accommodate a wheelchair lift.
*893 Ms. Tawanda May testified she and her mother, Mrs. Payne, went to the “coliseum sale” to shop for a van. Ms. May testified when Cobin Hebert approached and asked them what they were interested in, she and her mother told him they wanted a van that a wheelchair lift “could be put in.” According to Ms. May, Mr. Hebert left to get a second salesman, James Bryant. After telling him they needed a wheelchair lift installed in the van, Ms. May stated Mr. Bryant “[assured] us that a lift could be put in that van.”
Mrs. Payne testified when Mr. Hebert approached them, she told him she was looking for a van that would lift her grandson. She stated Mr. Hebert did not really “speak up on it,” but Mr. Bryant specifically addressed the subject. She testified he told her a wheelchair lift could be installed in the van. Mrs. Payne had previously looked at Dodge and Toyota vans, but ruled them out when she was told they could not accommodate a wheelchair lift. After purchasing the vehicle, she attempted to get the lift installed in the van. When she could not find anyone that could install the lift, she called Colleen Nugent, her grandson’s case worker, for assistance in finding a retrofitter to install the lift. When Ms. Nugent was unable to help, Mrs. Payne went to John Decker Lincoln Mercury in November of 1998. She was accompanied by Ms. Nugent. At that time the mileage on the van was approximately 10,000 miles. |2When she was finally informed by Mr. Bryant that a wheelchair lift could not be installed in the van, Mrs. Payne asked that the deal be rescinded. Mr. Bryant then brought in Tim Landry, the dealership manager, who told Mrs. Payne he also attempted to find a business that could install a wheelchair lift in the van, but was unsuccessful. Mr. Landry offered to buy back the van for $17,000.00, which was refused by Mrs. Payne because it was below the blue book value of the vehicle. She also refused an offer to swap the vehicle for another used model.
Colleen Nugent was employed by the State of Louisiana and assigned to provide social services to Mrs Payne’s grandson. She was an independent witness whose credibility was not attacked at trial. Ms. Nugent testified Mrs. Payne called her and explained she was having difficulty getting a wheelchair lift installed in a van she had recently purchased. She called numerous businesses that installed lifts and found that the type van Mrs. Payne purchased could not be fitted with a lift. She then spoke with Mr. Bryant, who despite being told of Ms. Nugent’s efforts to find someone who could install the lift, still insisted the van could accommodate a wheelchair lift. Subsequently, Mrs. Payne and Ms. Nugent went to the dealership premises and requested the sale of the van be rescinded. They then met with Mr. Landry, who made the $17,000 offer on the van.
Cobin Hebert, who at that time was a salesman for John Decker, testified he approached Mrs. Payne at the coliseum sale. He “vaguely” remembered Mrs. Payne. He also stated he did not remember if anyone was with Mrs. Payne. Mr. Hebert acknowledged, at some point, he brought Mr. Bryant into the negotiations with Mrs. Payne. Mr. Hebert candidly admitted he could not remember if Mrs. Payne mentioned the necessity of installing a lift in the van.
Mr. Bryant testified he assisted Mr. Hebert in selling the vehicle to Mrs. Payne. He remembered Mrs. Payne had someone with her during the negotiations. He also recalled being told that Mrs. Payne had a handicapped grandson. However, Mr. | aBryant could not recall being asked whether a wheelchair lift could be installed in the van. Specifically, he testified “nei *894 ther one of ’em, as far as I can remember sir, had asked anything about this van needs a ah, wheelchair lift if, or I cannot purchase this ... If it was said, I do not remember it” Mr. Bryant also could not recall ever telling Mrs. Payne and Colleen Nugent in November of 1998 that a wheelchair lift could be installed in the purchased van. He conveniently could not recall ever speaking with Colleen Nugent at any time.
Tim Landry testified he met with Mrs. Payne and “the lady that represented the State of Louisiana” in November of 1998. Mr. Landry admitted telling Mrs. Payne, at that time, that a wheelchair lift could not be installed in the van and he offered to buy back the van at less than its purchase price.
The trial court’s reason for rejecting Mrs. Payne’s claim was because he felt she must have been confused, noting “the fact that she had been looking at other vehicles, had had discussions concerning lifts in mini vans, ahm, months later can come back to cloud as to who said what, and what conversations were held.” However, Mrs. Payne’s actions and testimony belie his finding. Mrs. Payne testified she looked at both Toyota and Dodge vans, and was told by salesmen for each that their vans could not be fitted with lifts. The fact that she bought the Mercury van from John Decker, and did not buy the Toyota or Dodge van supports Mrs. Payne’s version of events.
The trial court also found it “strange” that if the “central theme of this was to get a lift” there was no mention in the sales documents of a wheelchair lift. This failure is not strange at all. Installation of wheelchair lifts is a particular task, performed by businesses that specialize in that area. Dealerships generally do not install lifts. Therefore, no reason existed to mention the lift installation in the sales documents.
It is also quite telling that Mrs. Nugent, the only independent witness | testifying in this matter, stated even after the sale Mr. Bryant continued to insist a lift could be placed in the van. Her credibility was not attacked and no reasons exist in the record to doubt her memory.
I am satisfied the evidence preponderates in Mrs. Payne’s favor and the sale should be rescinded. Is it reasonable to believe, if Tim Landry really thought the salesmen did not mislead Mrs. Payne, he would have offered to buy back the van or exchange it?